IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSE ANGEL IBARRA, # M-13620, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 13-cv-891-JPG |
| | ) |
| LIEUTENTANT TERRY, | ) |
| TRENTON ROUTIER, | ) |
| DR. MARY LOFTIN, NURSE SMITH, | ) |
| KIMBERLY STEPHENS, | ) |
| NURSE McCALLOGH, | ) |
| DONNA PARKER, CHARLEEN ROY, | ) |
| L. SCHNEIDER, KERRY A. WELCH, | ) |
| MICHAEL C. CUTRIGHT, | ) |
| and C/O GRIFFIN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Lawrence Correctional Center ("Lawrence"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claims arose between November 9, 2010, and August 28, 2011, while he was incarcerated at Robinson Correctional Center ("Robinson"). Plaintiff is serving a nine-year sentence for the manufacture and delivery of cocaine. Plaintiff claims that several Defendants were deliberately indifferent to his serious medical needs, and that others interfered with his attempts to exhaust his administrative remedies by using the prison grievance procedure.

By way of background, the Court notes that Plaintiff is prosecuting another civil rights claim in this Court, *Ibarra v. Loftin and Stephens*, Case No. 11-cv-581-JPG-PMF (filed June 5, 2011), which the Court shall refer to herein as *Ibarra I*. In that case, Plaintiff claims that the

Defendants were deliberately indifferent to his medical condition of colon cancer by delaying cancer testing and failing to provide him with treatment to relieve his pain in October 2010. He had emergency surgery to remove two tumors from his colon on November 5, 2010. The two Defendants who remain in *Ibarra I* are also named herein (Dr. Mary Loftin and Nurse Kimberly Stephens). Plaintiff suffered another injury (a dislocated shoulder) on March 17, 2011, when he passed out and fell. His pending deliberate indifference claims against Dr. Loftin in *Ibarra I* include failure to provide pain relief for the shoulder injury as well as for the colon condition both before and after surgery, between October 2010 and March 2011. Likewise, the claim against Nurse Stephens in *Ibarra I* is for deliberate indifference to his need for pain relief in October 2010 (*See* Docs. 10, 78 in *Ibarra I*).

Plaintiff had also pursued claims in *Ibarra I* against three other Defendants included in the instant case (Major Trenton Routier (also spelled Routien), Nurse Smith, and C/O Griffin). However, the claims against each of those Defendants were dismissed without prejudice from *Ibarra I*, after this Court determined upon threshold § 1915A review that Plaintiff had failed to state a claim against them (*See* Doc. 10 in *Ibarra I*). It appears that Plaintiff is attempting to reassert his claims against these Defendants in the instant action, which he is entitled to do.

**The Complaint**

The time frame of Plaintiff's factual allegations in the instant case overlaps somewhat with the events he described in *Ibarra I*. He begins by stating that he returned to the prison infirmary on November 9, 2010, following a November 5, 2010, surgery performed in Carle Hospital.[1] During the next 12 days, he asked Defendant Loftin (the doctor), and Defendant

---

[1] Although Plaintiff does not identify the nature of this surgery in the instant complaint, it must have been the colon cancer surgery which is the subject of *Ibarra I*.

Nurses Stephens, McCallogh, Parker, Roy, and two Jane Doe Nurses[2] about an infection, apparently related to the site of his surgery (Doc. 1, p. 8). All of these Defendants refused to provide him with an antibiotic. He later returned to general population.

Plaintiff sought medical attention numerous times for complaints of headaches, bone pain, post-surgical pain, nausea, vomiting, stomachache, vision problems, dizziness, fainting, numbness, and weakness (Doc. 1, pp. 9-11). On or about November 23 or 29, 2010, Defendant Loftin ordered a blood test in response to these complaints, and prescribed Ultram and Tylenol for Plaintiff's pain (Doc. 1, p. 9). After Plaintiff's visits on December 7 and 27, 2010, Defendant Loftin referred him to the eye doctor and dentist. *Id*. After a January 2011 sick call visit, he was given an appointment for January 31, 2011 for blood tests, urine tests, and x-rays; Defendant Loftin and unidentified nurses prescribed cold medicine. *Id*.

On February 3, 2011, Plaintiff made an emergency visit to the infirmary, after which Defendants McCullogh and Roy advised him to see Defendant Loftin the following day (Doc. 1, p. 10). They gave him no medication at that time. Plaintiff returned on February 4, 2011, and was seen by Defendants Loftin, Parker, and Nurse Jane Doe #2. Blood and urine samples were taken, Plaintiff was x-rayed, and he remained in the infirmary overnight for observation. *Id*.

On February 5, 2011 (the next day), Defendant Nurse Smith called Defendant Major Routier,[3] who kicked Plaintiff out of the infirmary "with insult and threat." *Id*. Defendant Routier warned Plaintiff not to come back to the infirmary or he would get a disciplinary report.

---

[2] Plaintiff names four Defendant Jane Doe Nurses, and these parties were inadvertently omitted from the docket sheet. The Clerk shall be directed to add these parties.

[3] Plaintiff also spells this Defendant's name as "Routien," which is how this party was identified in *Ibarra I*. Plaintiff claimed in *Ibarra I* that during this February 5 incident, Defendant Routien threatened that he could kill Plaintiff and no one would ever know. The Court dismissed this death threat claim (Count 2 in *Ibarra I*) against Defendant Routien with prejudice for failure to state a claim upon which relief may be granted.

Plaintiff filed a grievance over this incident, which was denied. *Id*.

Despite the above threat, Plaintiff did return to the infirmary on February 23, 2011, complaining of stomachache, headache, nausea, vomiting, and fainting. Defendant Loftin noted his symptoms, sent him back to his cell, and told him she would call him back later (Doc. 1, p. 10).

Plaintiff next returned to the infirmary on March 15, 2011, complaining to Defendants Roy and Loftin that he felt weakness and reporting that he had passed out earlier in the day and bumped his head. They kept him in the infirmary for the day (Doc. 1, p. 11). He was sent back to his cell on March 16, 2011 with some pain medication. Based on Plaintiff's complaints of fainting, pain, headache, dizziness, nausea, and vomiting, Defendant Loftin told Plaintiff not to eat anything during the night and she would do an x-ray and ultrasound the following day.

The next day (March 17, 2011), Plaintiff passed out and fell. He was taken to the infirmary for emergency care. He had bumped his head and dislocated his shoulder in the fall; about two hours later he was taken to an outside hospital where his shoulder was treated (Doc. 1, p. 11). Upon his return to prison, he stayed in the infirmary for several days so his shoulder could recuperate, but neither Defendant Loftin nor the nurses did anything to investigate why he had fainted.

During April and May 2011, Plaintiff reported the same symptoms and sought treatment from Defendants Loftin, Parker, Roy, Smith, Stephens, McCallogh, Schneider, and Jane Does #1 and #2. These Defendants prescribed him cold medicine, Maalox, Tylenol, Pepto Bismol, Prilosec, Colace, and Metamucil (Doc. 1, p. 12).

Plaintiff sought emergency treatment from Defendant Nurses Parker and Roy on June 13, 2011, and was told they would call him back the next day to see Defendant Loftin. However,

they gave him no other treatment that day.  The following day, Plaintiff was not called out to see the doctor (Defendant Loftin).  Plaintiff asked two guards to look into the situation, and they relayed the message that "for some reason the medical staff refused to see" Plaintiff, and he should sign up for sick call. Later that day, Plaintiff told Defendant Lieutenant Terry that he was supposed to have been called to see the doctor, but for some reason the doctor and nurses refused to see him.  Defendant Terry told Plaintiff there was nothing he could do.  Plaintiff signed up for sick call the next day, but Defendant Loftin and the nurses still refused to give him any medical attention (Doc. 1, p. 13).

      Defendant Loftin advised Plaintiff in July 2011 to do exercises for his injured shoulder. He did so under the supervision of Defendant Stephens.  However, he complains that Defendant Loftin still did nothing to investigate the cause of his fainting.

      On July 28, 2011, Plaintiff asked a correctional officer (Hicks, who is not included as a Defendant) for permission to go to the infirmary, because Plaintiff was feeling ill and his name had been erased from the sick call list.  Officer Hicks called Defendant Officer Griffin to ask permission, however, Defendant Griffin refused to allow Plaintiff to go to the infirmary (Doc. 1, p. 14).  In spite of this, Plaintiff went to the infirmary anyway.  He "was denied treatment once again" when he got there, and two officers took him away and threw him in a suicide cell.

      On August 28, 2011, Plaintiff was transferred to Danville Correctional Center ("Danville").  The doctor there performed several tests, and found that Plaintiff had intestinal bacteria.  This had been the cause of his pain and loss of consciousness.  Plaintiff was treated with a strong antibiotic and instructed to rest (Doc. 1, p. 14).

      Finally, Plaintiff alleges that Defendants Cutright and Welch interfered with his attempts to pursue grievances over his medical treatment and "threats by medical staff" (Doc. 1, pp. 15-

17). Defendant Cutright refused to provide Plaintiff with an interpreter (Plaintiff is a native Spanish-speaker) to translate his March 8, 2011, written grievance into English. Similarly, Defendant Welch refused to provide a Spanish-English interpreter for Plaintiff's March 28, 2011, grievance. Both Spanish-language grievances were returned to Plaintiff without an answer.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant. After fully considering the allegations in Plaintiff's complaint, the Court concludes that this action is subject to summary dismissal.

For purposes of discussion, Plaintiff's claims shall be divided into two counts: Deliberate indifference to medical needs (Count 1), and interference with Plaintiff's access to the prison grievance process (Count 2).

**Count 1 – Deliberate Indifference to Medical Needs**

Deliberate indifference by a medical provider to a prisoner's serious medical needs may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. See also *Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001).

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference

> involves a two-part test. The plaintiff must show that (1) the medical condition
> was objectively serious, and (2) the state officials acted with deliberate
> indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). As to the subjective component, a complaint must indicate that the prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm" to the inmate. *Farmer,* 511 U.S. at 842.

The Seventh Circuit considers the following to be indications of an objectively serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). In addition, a condition that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention is also considered a "serious" medical need. *Id.* Arguably, Plaintiff's symptoms (pain, loss of consciousness, nausea, headaches, etc.) indicate that he suffered from one or more objectively serious medical conditions. At this stage of the litigation, Plaintiff's pleading has satisfied the objective component of an Eighth Amendment claim. However, the remaining question is whether he has sufficiently alleged deliberate indifference on the part of the various Defendants to a known risk of serious harm.

Plaintiff's allegations show that, from November 2010 through May 2011, he received diagnostic blood and urine tests, x-rays, referrals to an eye doctor and dentist, and was kept in the infirmary for treatment on two occasions (in addition to the two infirmary stays following his return from treatment in an outside hospital). At various times, he was prescribed cold medicine, pain medication (Ultram & Tylenol), and medication for his nausea and abdominal problems

(Maalox, Pepto Bismol, Prilosec, Colace, and Metamucil).  Taken as a whole, these allegations indicate that Defendant Loftin and the Defendant nurses evaluated Plaintiff's symptoms and treated his complaints over an approximate seven-month period.  On occasion, Plaintiff was not given immediate treatment, but was scheduled to return for evaluation the following day.  Plaintiff did not allege that he suffered any harm at those times, and this type of scheduling of patient care did not violate his rights.  The complaint's recitation of Plaintiff's medical visits does not evince deliberate indifference to his medical problems, but instead shows that overall, the medical-provider Defendants made consistent efforts to respond to Plaintiff's issues with a variety of tests and treatments.

**A.  Intestinal Infection**

To be sure, Plaintiff takes issue with the decisions made by Defendants Loftin, Stephens, McCallogh, Parker, Roy, and the two Jane Doe nurses that he did not require treatment with antibiotics following his November 5, 2010, surgery.  He also complains that after he passed out and dislocated his shoulder, the medical-provider Defendants did not specifically investigate why he had fainted.  Viewed through the hindsight of the Danville doctor's diagnosis that Plaintiff suffered from an intestinal bacterial infection, it is not surprising that Plaintiff now questions the adequacy of his prior medical care.

An inmate's mere dissatisfaction with the medical care he receives in prison does not state a constitutional claim for deliberate indifference to medical needs, even if the quality of care was substandard to the point of negligence or malpractice.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).  The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to

meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). The mere fact that a prescribed treatment has proved to be ineffective does not state a claim. *See Duckworth v. Ahmad,* 532 F.3d 675, 680 (7th Cir. 2008). Further, a difference of opinion between medical professionals concerning the treatment of an inmate will not support a claim for deliberate indifference. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001).

In the instant case, after Plaintiff was transferred out of Lawrence, his new treating doctor at Danville performed tests, diagnosed an infection, and treated it with antibiotics which apparently resolved Plaintiff's symptoms. However, this outcome does not establish deliberate indifference on the part of Defendant Loftin or the other medical Defendants at Lawrence, who, according to Plaintiff's complaint, performed a number of diagnostic tests on him in an effort to determine what treatment was needed, then provided him with various medications between November 2010 and July 2011. At worst, the Lawrence Defendants' failure to diagnose an intestinal infection may suggest ineptitude, negligence or malpractice on their part. It may also merely show a difference of opinion between medical professionals on matters such as the need for medical tests, or the significance of Plaintiff's reported symptoms. As stated above, such differences of professional opinion do not constitute deliberate indifference. Again, even if the Defendants' prescribed course of treatment were to constitute malpractice, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *King v. Kramer,* 680 F.3d 1013, 1019 (7th Cir. 2012) (internal citations and quotations omitted).

Assuming for the sake of argument that the Defendants' actions did amount to negligence or malpractice, Plaintiff's description does not show that they crossed "the line between malpractice and treatment that is so far out of bounds that it was blatantly inappropriate or not

even based on medical judgment," *King*, 680 F.3d at 1019, to violate his constitutional rights. To the contrary, nothing in the complaint indicates that the treatment Plaintiff received at Lawrence was not based on medical judgment, or that any of the Lawrence medical Defendants recklessly disregarded a known risk of harm.

**B. Alleged Denial of Emergency Treatment**

Plaintiff describes two occasions when he sought emergency treatment but did not receive any. On June 13, 2011, Defendants Parker and Roy set an appointment for Plaintiff to be seen the next day, but Plaintiff did not get treatment over the next two days. On July 28, 2011, Plaintiff went to the infirmary seeking emergency treatment (despite Defendant Griffin's denial of permission). He does not say which medical provider "denied treatment" on that occasion.

Taken in the context of the course of Plaintiff's treatment by Defendant Loftin and the Defendant Nurses over the preceding months, as well as Plaintiff's admission that during July 2011, Defendant Loftin prescribed exercises for his injured shoulder, it is apparent that Plaintiff continued to receive some treatment between June 13 and July 28, 2011.[4] Prison medical providers must evaluate requests for "emergency" treatment on a regular basis, and not every issue that a prisoner deems an "emergency" turns out to be one. Plaintiff does not describe what emergency he had on June 13, 2011, but the fact that Defendants Parker and Roy set him an appointment with the doctor for the following day indicates that in their judgment, his issue could be addressed at that time. It is not clear why Plaintiff was not called for that June 14, 2011 appointment, or why he was not seen when he signed for sick call the next day after feeling faint. However, these events do not indicate that a Defendant knowingly denied care to Plaintiff in the

---

[4] Plaintiff's exhibits include a June 29, 2011, response to a grievance he filed complaining about medical care (Doc. 1-1, p. 9). This document states that Plaintiff was examined by medical staff on twelve days in June 2011, including June 14, 15, 16, 17, 24, 25, 28, and 29. On June 15, he was examined in the infirmary.

face of a serious risk of harm to his health.

Defendant Terry, who is not a medical provider, merely declined to intervene on June 14, 2011 when Plaintiff was not called to the infirmary to see Defendant Loftin. Plaintiff had already been advised to sign up for sick call, and under these circumstances, Defendant Terry's failure to come to Plaintiff's rescue does not amount to deliberate indifference to his medical needs.

As to the July 28, 2011 incident, Plaintiff states that although he had signed up to be seen on sick call that day, his name had somehow been erased from the list. Defendant Griffin (a correctional officer) then refused to give Plaintiff permission to visit the infirmary when he felt ill. This did not stop Plaintiff from going to the infirmary, but when he got there, he was "denied treatment once again" (Doc. 1, p. 14). The complaint does not make clear whether one of the medical-provider Defendants refused to see or treat Plaintiff, or whether the denial of treatment was due to Plaintiff's decision to move about the prison without permission instead of following the normal sick call procedure. The fact that Plaintiff was "grabbed" by two officers when he got to the infirmary suggests the latter. Given all these circumstances, the allegations do not suggest that Defendant Griffin or any other Defendant was deliberately indifferent to Plaintiff's medical needs on that occasion.

## C. Discharge from Infirmary on February 5, 2011

Plaintiff had been kept overnight on February 4, 2011, for observation after Defendant Loftin examined him. The next day, he claims that Defendant Nurse Smith and Defendant Routier kicked him out of the infirmary, and that Defendant Routier used insulting and threatening language. These allegations do not suggest that Plaintiff suffered any harm because of being returned to his cell, or that his health was threatened in any way by these Defendants'

actions. Thus, he fails to plead a cognizable claim for deliberate indifference based on this incident.

This is the second time that Plaintiff has attempted to assert a civil rights claim against Defendants Smith and Routier over the events of February 5, 2011. As noted in *Ibarra I*, Defendant Routier's "death threat" did not violate the Eighth Amendment. The same is true for the verbal insults and threats (including a threat of disciplinary action) alleged in the instant complaint.[5] This claim shall be dismissed again, this time with prejudice.

To summarize, the failure of Defendant Loftin and the Lawrence Nurses to discover Plaintiff's intestinal infection may have been negligence or malpractice at worst. Given the numerous health care visits, tests, and treatment Plaintiff received between November 2010 and July 2011, the fact he could not obtain treatment on the June and July 2011 dates does not rise to the level of deliberate indifference on the part of any Defendants. Nor does his description of events on February 5, 2011, suggest that Defendants Smith or Routier placed him at risk of harm to his health. Accordingly, the deliberate indifference claims against Defendants Loftin, Stephens, McCallogh, Parker, Roy, Schneider, Smith, the Jane Doe Nurses, and Defendants Terry, Griffin, and Routier shall be dismissed with prejudice.

**Count 2 – Interference with Grievances**

Lastly, Plaintiff asserts that Defendants Cutright and Welch thwarted his efforts to exhaust his administrative remedies, when they failed to give him an interpreter to translate his written grievances from Spanish into English on two occasions in March 2011. If Plaintiff had stated any constitutional claim in this action, his efforts to exhaust his administrative remedies by

---

[5] Plaintiff includes a grievance report (Doc. 1-1, p. 3) which states that Plaintiff was discharged from the infirmary on February 5, 2011, after the overnight observation. Defendant Routier (Routien) told the grievance officer that he informed Plaintiff, through an interpreter, that if he refused to leave the infirmary, it would mean he was refusing housing and he would be taken to segregation.

using the prison grievance process could have relevance if a Defendant were to raise the defense of non-exhaustion. But, as explained above, Plaintiff has failed to state a claim for deliberate indifference to his medical needs. Further, even if Defendants Cutright and Welch improperly hindered Plaintiff's ability to pursue his grievances, such actions did not violate any constitutional right.

A Defendant's improper handling of a prisoner's grievances does not support an independent constitutional claim. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Defendants Cutright and Welch were not personally involved in any of the medical providers' decisions about Plaintiff's medical care, which was the subject of his grievances. The alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Thus, Plaintiff's claim against Defendants Cutright and Welch shall be dismissed with prejudice.

**Pending Motions**

Because this action shall be dismissed, Plaintiff's motion for recruitment of counsel (Doc. 3) and motion for service of process at government expense (Doc. 4) are **DENIED AS MOOT.**

**Disposition**

The Clerk is **DIRECTED** to add Jane Doe Nurses #1-#4 as party Defendants in this action.

For the reasons stated above, this action is **DISMISSED with prejudice** for failure to

state a claim upon which relief may be granted.

Plaintiff is **ADVISED** that this dismissal shall count as one of his allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch,* 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: September 26, 2013**

s/ <u>J. Phil Gilbert</u><br>
United States District Judge